IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| MERITAGE HOMEOWNERS' ASSOCIATION, | Case No. 3:17-cv-00267-AA<br>OPINION AND ORDER |
| Plaintiff, | |
| v. | |
| NICHOLAS LEE WATT and PATRICIA MOUDY WATT, | |
| Defendants. | |

AIKEN, Judge:

Plaintiff Meritage Homeowners' Association ("Meritage") filed this action against defendants Nicholas Lee Watt and Patricia Moudy Watt ("the Watts"), asserting that the Watts owe Meritage dues, assessments, interest, and fees in connection with a vacation property on the Oregon coast. Meritage now moves for partial summary judgment. For the reasons set forth below, Meritage's motion is denied.

# BACKGROUND[1]

I.  *General Factual Background*

In 2006, the Watts took out a loan to purchase a second residence in Newport, Oregon ("property"). The property was one of eighteen townhouse units within a planned community that is subject to a series of covenants and restrictions enforced by Meritage. The original lender, Mortgage Trust, Inc., obtained a security interest in the property pursuant to a promissory note and deed of trust. In 2012, Mortgage Trust, Inc., assigned its interest in the deed of trust to Bank of New York Mellon ("BNYM"). Later that year, the Watts defaulted on their payment obligations and BNYM commenced foreclosure proceedings. In March 2014, defendants filed a petition for relief under Chapter 13 of the Bankruptcy Code, staying BNYM's foreclosure efforts.

In June 2014, the Watts proposed a second amended Chapter 13 plan.[2] The second amended plan included a nonstandard provision purporting to vest the property in BNYM upon confirmation. BNYM objected to the second amended plan because it did not want to take title to the property. BNYM found taking title objectionable, in part, because it would make BNYM responsible for ongoing obligations associated with the property — including dues and assessments. Those obligations were substantial. Dues for the property exceed $15,000 per year. In addition, the property contains defective windows that the Watts have not replaced. Under a special assessment levied in late 2013, unit owners were liable for up to $5,000 per month for failure to replace the defective windows. Compl. ¶ 19 (doc. 1-1).

---

[1] Unless otherwise noted, the facts are drawn from this Court's decision in *Bank of New York Mellon v. Watt*, 2015 WL 1879680 (D. Or. Apr. 22, 2015).

[2] Meritage objected to the Watts' first two proposed plans.

On October 15, 2014, the bankruptcy court confirmed the plan over BNYM's objection. BNYM appealed. On April 22, 2015, this Court vacated and remanded, holding that the bankruptcy court lacked statutory authority to force an objecting creditor to assume a debtor's interest in and ongoing liabilities associated with a piece of property. On August 27, 2015, the property was reconveyed to BNYM through a sale under 11 U.S.C. § 363.

The practical effect of this complex history is that, after they filed for bankruptcy, the Watts were the owners of the property for two periods of time: from March 13, 2014 (the date of the Chapter 13 filing) to October 17, 2014 (the date of the plan confirmation, when BNYM took title) ("first post-petition ownership period") and again from April 22, 2015 (the date of this Court's order vacating the order confirming plan) to August 27, 2015 (date of the § 363 sale to BNYM) ("second post-petition ownership period").

II. *Debts at Issue in the Motion for Summary Judgment*

Meritage seeks summary judgment with respect to two separate debts, as well as interest and fees associated with those debts. First, Meritage seeks to recover a special assessment levied during the first post-petition ownership period. Second, Meritage seeks to recover HOA dues for the second post-petition ownership period.

A. *Special Assessment*

In 2011, the Watts and other unit owners sued Meritage in Lincoln County Circuit Court ("HOA litigation"). *Id.* ¶ 11. In July 2012, the parties to the HOA litigation reached a settlement agreement. *Id.* ¶ 15. After the settlement, Meritage's insurance company refused to pay a claim for a portion of attorney's fees incurred in the HOA litigation. *Id.* ¶ 25. Meritage levied a special assessment to recoup the unreimbursed fees ("first special assessment"). In accordance with the terms of a settlement agreement reached in the HOA litigation, Meritage levied the first

special assessment only against the plaintiffs in the HOA litigation rather than against all unit owners.

Also in 2011, Meritage filed collection actions against the Watts and several other unit owners. Before the Watts filed for bankruptcy, they entered into a stipulated judgment obligating them to pay Meritage $175,504.[3] The amount owed under the stipulated judgment included the first special assessment. Companion collection actions against two other unit owners did not settle and proceeded to summary judgment in September 2014, about six months after the Watts filed for bankruptcy. *Id.* ¶ 26. In those companion actions, the Lincoln County Circuit Court ruled that the first special assessment violated Oregon law because it had been assessed against only a subset of unit owners without a determination that those unit owners were at fault. In response to the Lincoln County Circuit Court's decision, Meritage rescinded the first special assessment. In the Watts' case, Meritage applied a credit in the amount of the first special assessment to the $175,504 stipulated-judgment debt, which was by then a part of the Watts' bankruptcy proceeding. Pl.'s Am. Concise Statement Material Facts ¶ 14 (doc. 18).

During the fourth quarter of 2014, Meritage found that the Watts (and others) were at fault with respect to the unreimbursed attorney's fees in the HOA litigation. It then levied a new special assessment ("second special assessment") against the Watts in the amount of $26,316.25. Compl. ¶¶ 21 & 29; Freitag Decl. Ex. 1 Dec. 30, 2016. Meritage seeks a summary judgment order directing the Watts to pay the second special assessment plus interest. Freitag Decl. Ex. 1 Dec. 30, 2016.

---

[3] A declaration accompanying the motion for summary judgment states that the stipulated judgment was entered in February 2013. Freitag Decl. ¶ 15 Dec. 30, 2016 (doc. 15). The complaint states that the stipulated judgment was entered in February 2014. Compl. ¶ 21. For the purposes of this motion, the precise date does not matter because it is undisputed that the judgment was entered before the Watts filed their bankruptcy petition.

Page 4 – OPINION AND ORDER

B.  *Dues*

In the second post-petition ownership period, HOA dues associated with the property totaled $7,100.80. *Id.* Meritage seeks a summary judgment order directing the Watts to pay those dues plus interest and late fees. *Id.*

C.  *Total Amount Sought and Offset*

The Watts tendered $14,969.79 to Meritage in October 2015, purportedly to settle in full Meritage's claim for unpaid dues, interest, and fees. *Id.* ¶ 29. Meritage accepted that payment as a partial payment. Meritage has calculated interest and fees on both the second special assessment and dues through December 15, 2016, for a total alleged liability of $43,996.23. *Id.* Ex. 1. Crediting the Watts' payment against that amount, Meritage now seeks $29,026.47. *Id.*

III.  *Procedural History*

In June 2016, Meritage initiated this action as an adversary proceeding in bankruptcy court. Pursuant to 28 U.S.C. § 157(d) and Local Rule 2100-4, Judge Dunn *sua sponte* issued a report and recommendation asking this Court to withdraw the reference with respect to the adversary proceeding. Doc. 1-2 at 38. Judge Dunn's recommendation rested on his determination that state law issues predominate over bankruptcy issues in this case and on the relationship between Meritage's claims in this action and its claims against BNYM in another case already pending in this Court. *Id.* at 53. Judge Dunn also questioned whether the bankruptcy court had authority to adjudicate Meritage's claims under recent Supreme Court precedent. *Id.* at 53–54.

The case was assigned to Judge Hernandez, who adopted Judge Dunn's report and recommendation and withdrew the reference. Doc. 25. The case was then reassigned to me

based on its close factual connection to *Meritage Homeowners' Association v. The Bank of New York Mellon*, Case No. 6:16-cv-00300. Doc. 27.

## STANDARD OF REVIEW

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine issue of material fact. *Id.*; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324. "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. Partnership*, 521 F.3d 1201, 1207 (9th Cir. 2008).

## DISCUSSION

A Chapter 13 bankruptcy, "often called a reorganization, is designed to encourage financially overextended debtors to use current and future income to repay creditors in part, or in whole, over the course of a three- to five-year period." *In re Blendheim*, 803 F.3d 477, 485 (9th Cir. 2015) (internal quotation marks omitted). "Unlike Chapter 7 proceedings, where a debtor's nonexempt assets are sold to pay creditors, Chapter 13 permits debtors to keep assets such as their home and car so long as they make the required payments and otherwise comply with their obligations under their confirmed plan of reorganization." *Id.* One of the "tools" available in Chapter 13 reorganization is discharge. *Id.* at 486. Upon completion of payments under a confirmed Chapter 13 plan, the debtor is entitled to "a discharge of all debts provided for by the plan." 11 U.S.C. § 1328(a). "The discharge eliminates the creditor's ability to proceed *in*

*personam* against the debtor whether the debt is secured or unsecured[.]" *Blendheim*, 803 F.3d at 486.

Although one purpose of Chapter 13 is "to enable a debtor to make a fresh start," the debtor does not have the right to emerge from bankruptcy "completely free of all debt." *In re Sperna*, 173 B.R. 654, 659 (9th Cir. B.A.P. 1994). In particular, Chapter 13 bankruptcy does not discharge personal liability for post-petition debts — those obligations incurred after the debtor files for bankruptcy. HOA dues and assessments that arise after the Chapter 13 filing are post-petition debts. *In re Foster*, 435 B.R. 650, 660–61 (9th Cir. B.A.P. 2010) ("It follows that debtor's liability [for HOA dues] is not rooted in the pre-bankruptcy past, but rather is rooted in the estate in property itself.") (quotation marks omitted and alterations normalized). That is so because under Oregon law, the obligation to pay dues and assessments to an HOA is not merely a contractual obligation. Instead, the requirement to pay HOA dues and assessments is a covenant that runs with the land, binding on the debtor so long as she retains ownership of the property. Or. Rev. Stat. § 94.712(1); *Bank of N.Y. Mellon*, 2015 WL 1879680 at *3.

I. *Obligation to Pay the Second Special Assessment*

The parties disagree over whether the second special assessment is a pre-petition debt, subject to discharge upon plan completion, or a post-petition debt, for which the Watts remain personally liable. Meritage argues that the second special assessment is a post-petition debt because it was levied after the Watts filed for bankruptcy. The Watts respond that the second special assessment is merely a recycled version of the first special assessment, which was a pre-petition debt.

Whether the second special assessment is subject to discharge hinges on whether it is a debt "provided for by the plan." 11 U.S.C. § 1328(a). It is undisputed that (1) the second special

Page 7 – OPINION AND ORDER

assessment was not expressly part of the plan and (2) the first special assessment, which was part of the stipulated judgment, was a debt provided for by the plan. So the question is whether the first and second special assessments should be treated as the same debt or as different debts.

The authorities cited by the parties do not resolve that question. For example, both parties rely on 11 U.S.C. § 523(a)(16). But that provision is inapplicable on its face to discharges under 11 U.S.C. § 1328(a). *Foster*, 435 B.R. at 658. And even if it did apply, it would not settle the parties' dispute. Section 523(a)(16) provides that a discharge under certain provisions of the Bankruptcy Code does not extend to a debt for any HOA fee or assessment that "becomes due and payable after the order for relief." To decide whether the second special assessment fell within the scope of section 523(a)(16)'s exclusion, I would first have to determine when that assessment became "due and payable" within the meaning of the statute. For present purposes, that inquiry is indistinguishable from the question whether the first and second assessments are the same debt.

Meritage's reliance on *In re Rosenfeld*, 23 F.3d 833 (4th Cir. 1994), is similarly misplaced. Meritage cites *Rosenfeld* for the proposition that "an association's claim for post-petition dues does not arise until the dues are assessed." Pl.'s Reply Defs.' Resp. Pl.'s Am. Mot. Partial Summ. J. 9 (doc. 23) (quoting *Rosenfeld*, 23 F.3d at 837). Meritage takes that quote out of context and misconstrues the Fourth Circuit's holding. In *Rosenfeld*, the Fourth Circuit faced a split of authority on the character of post-petition HOA dues in the bankruptcy context. 23 F.3d at 836. One line of cases held that any obligation to pay post-petition HOA dues is a pre-petition debt subject to discharge because such obligations arise from a pre-petition contract. *Id.* at 836–37. Another line of cases held that post-petition HOA dues are not dischargeable where, under state law, the obligation to pay such dues is "a function of owning the land with which the

covenant runs." *Id.* at 837. The Fourth Circuit adopted the reasoning of the second line of cases. When it stated that the obligation to pay dues "does not arise until the dues are assessed," the court simply meant that the obligation to pay did not arise from the pre-petition contract between the debtor and the HOA. That holding, which has been adopted by the Ninth Circuit Bankruptcy Appellate Panel, *Foster*, 435 B.R. at 658–59, and this Court, *Bank of N.Y. Mellon*, 2015 WL 1879680 at *3, does not address how to characterize an assessment when the debt arises from pre-petition events but is levied post-petition.

From a pragmatic perspective, the first and second special assessments appear to be the same debt. Both assessments are an attempt to collect the unreimbursed attorney's fees from the HOA litigation. Both assessments thus arose out of the same pre-petition conduct: the Watts' participation in the HOA litigation. The only difference between the first and second special assessments is the finding that the Watts were at fault with respect to the unreimbursed fees. That finding, too, rests on the Watts' pre-petition decision to pursue the HOA litigation. The fact that the first and second special assessments are attempts to obtain reimbursement for the same expenses associated with the same pre-petition conduct suggests that the second special assessment is a debt provided for by the plan.

*In re Ybarra*, 424 F.3d 1018 (9th Cir. 2005), further supports that conclusion. *Ybarra* was a Chapter 7 bankruptcy case. The Chapter 7 and Chapter 13 discharge provisions differ significantly. In a Chapter 7 bankruptcy, the debtor receives a broad discharge "from all debts that arose before the date of the order for relief[.]" 11 U.S.C. § 727(b). In a Chapter 13 bankruptcy, by contrast, the discharge extends only to "all debts provided for by the plan." *Id.* § 1328(a). Despite those differences, *Ybarra* is instructive because it explains when a debtor's

post-petition conduct can render a debt non-dischargeable even when it is connected to pre-petition events.

In *Ybarra*, the Ninth Circuit had to determine whether certain attorney's fees incurred post-petition were discharged in bankruptcy. 424 F.3d at 1023. The court summarized case law on post-petition attorney's fees by stating that "post-petition attorney fee awards are not discharged where[,] post-petition, the debtor voluntarily pursued a whole new course of litigation, commenced litigation, or returned to the fray voluntarily." *Id.* at 1024 (citations and quotation marks omitted, alterations normalized).

The court then turned to the facts of the case. Ybarra had argued that a state-court employment discrimination lawsuit she had filed should be categorized as exempt property in her bankruptcy proceeding. *Id.* at 1027. After she prevailed in that argument, she had a choice between accepting a lump-sum settlement or reinitiating the lawsuit. She chose the latter. The Ninth Circuit held that choice was "sufficiently voluntary and affirmative to be considered returning to the fray" and held that the attorney's fees incurred post-petition were not discharged in the bankruptcy. *Id.* at 1027 (quotation marks omitted). *Ybarra* thus stands for the proposition that courts may consider a debtor's post-petition conduct in determining whether a debt was discharged. Importantly, the focus is on the actions of the debtor, not the actions of the creditor or some third party.

Unlike the debtor in *Ybarra*, the Watts took no action post-petition that can fairly be characterized as voluntarily reentering the fray. The Watts had already settled their collection action before they filed for bankruptcy. The invalidation of the first special assessment, the rescission of that assessment, and the timing of the second special assessment were all completely out of the Watts' control.
Page 10 – OPINION AND ORDER

Meritage advances a bright-line rule that assessments and dues are always tied to the date they are levied. But such a rule would allow homeowners' associations to circumvent the intent of the Bankruptcy Code. A homeowners' association that was dissatisfied with its right to payments under a Chapter 13 plan could simply rescind assessments, apply a "credit" (which Meritage correctly notes provides no benefit to a debtor who completes her plan and obtains a discharge), and levy "new" post-petition assessments in the same amount. In view of that possibility of manipulation and relying on *Ybarra*, I reject a rigid rule regarding the characterization of HOA assessments. In each case, the court must undertake a fact-specific inquiry to discern the true nature of the debt at issue and consider the debtor's role, or lack thereof, in the post-petition events.

On the particular facts presented here, I conclude that the second special assessment is simply the first special assessment in a new form. Because the Watts' obligation to pay both the first and second special assessments arose from the same pre-petition conduct, and because the Watts played no affirmative role in the post-petition events that required the first special assessment to be rescinded, the second special assessment is part of a debt "provided for by the plan" and subject to discharge under § 1328(a). Meritage's motion for summary judgment is denied with respect to the second special assessment.

II.   *Obligation to Pay Dues*

It is undisputed that the dues incurred in the second post-petition ownership period are post-petition debts that the Watts are obligated to pay. The Watts, however, argue that their payment of $14,969.79 more than satisfied that obligation.

Meritage asserts the Watts owe (1) $7,100.80 in dues; (2) $322.16 in interest from the second post-petition ownership period; (3) $1,302.66 in interest from the period between August

27, 2015 (the date of the § 363 sale) and December 15, 2016; and (4) $800.00 in late fees. I agree that the Watts were obligated to pay the $7,100.80 in dues and $322.16 in interest that accrued before the § 363 sale, for a total of $7,422.96. The Watts are also liable for any portion of the remaining interest and late fees attributable to the time period before the date of the settlement payment in October 2015. Although it is not clear from the summary judgment record precisely how much the Watts owed at the time of the settlement payment, it is clear that the settlement payment more than satisfied their obligation to pay dues, interest, and fees. Meritage's motion for summary judgment is denied with respect to unpaid dues.[4]

## CONCLUSION

Plaintiff's Amended Motion for Partial Summary Judgment (doc. 17) is DENIED.

IT IS SO ORDERED.

Dated this 11th day of April 2017.

_Ann Aiken_
Ann Aiken
United States District Judge

---

[4] Meritage states it intends to file a motion seeking attorney's fees. It is possible that Meritage would be entitled to attorney's fees and costs to extent they (1) are attributable to efforts to collect the unpaid dues only and not the second special assessment and (2) took place before the date of the settlement payment. However, any such entitlement would be offset by the amount of the settlement payment that exceeded the Watts' dues, interest, and fees obligation.

Page 12 – OPINION AND ORDER