IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| MERITAGE HOMEOWNERS'<br>ASSOCIATION, | Case No. 3:17-cv-00267-AA<br>**AMENDED OPINION AND ORDER** |
| Plaintiff, | |
| v. | |
| NICHOLAS LEE WATT and PATRICIA<br>MOUDY WATT, | |
| Defendants. | |

AIKEN, Judge:

Plaintiff Meritage Homeowners' Association ("Meritage") filed this action against defendants Nicholas Lee Watt and Patricia Moudy Watt ("the Watts"), asserting that the Watts owe Meritage dues, assessments, interest, and related to a vacation property on the Oregon coast. The Watts now move for summary judgment. For the reasons set forth below, the motion is granted in part and denied in part. This opinion was initially filed August 13, 2017, but was amended after the Watts filed a motion for reconsideration.

## BACKGROUND[1]

In 2006, the Watts took out a loan to purchase a second residence in Newport, Oregon ("the property"). The property, one of eighteen townhouse units within a planned community known as Meritage at Little Creek, is subject to a series of covenants and restrictions ("CCRs") enforced by Meritage. Pursuant to the CCRs, unit owners are responsible for maintenance and repair of windows. Compl. ¶ 14.

In 2008 and 2009, Meritage and other interested parties filed a construction defect action in state court, alleging defective installation of windows in all Meritage at Little Creek units ("the window litigation"). The defective windows caused substantial water damage to individual units as well as to common areas of Meritage at Little Creek. In 2011, the Watts and ten other Meritage at Little Creek owners sued Meritage in state court ("the HOA litigation"). The plaintiffs in the HOA litigation then intervened in the window litigation. Also in 2011, Meritage sued the Watts and other unit owners in state court for failure to pay assessments and charges and for violating the CCRs ("the collection litigation"). *Id.* ¶ 20.

In 2012, the HOA litigation and the window litigation settled. After the settlement in the HOA litigation, Meritage's insurance company refused to pay a claim for a portion of Meritage's attorney's fees. Meritage levied a special assessment to recoup those unreimbursed fees ("first special assessment"). In accordance with the terms of the HOA litigation settlement agreement, Meritage levied the first special assessment only against the plaintiffs in the HOA litigation

---

[1] Unless otherwise noted, the facts are drawn from this Court's decision in *Meritage Homeowners' Association v. Watt*, 2017 WL 1364209 (D. Or. Apr. 11, 2017).

rather than against all unit owners.[2] Also in 2012, the Watts defaulted on their loan payments. Lender Bank New York Mellon ("BNYM") instituted foreclosure proceedings.

In September 2013, Meritage approved a resolution imposing a fine of $500 per day, up to $5,000 per month, against any unit owner that failed to repair the defective windows or deposit the money necessary to begin the window replacement process. *Id.* ¶ 19.

In February 2014, Meritage obtained a stipulated judgment of $175,504 against the Watts in the collection litigation. One month later, the Watts filed a petition for relief under Chapter 13 of the Bankruptcy Code. In June 2014, the Watts proposed a second amended Chapter 13 plan.[3] The second amended plan included the stipulated judgment from the collection litigation in its list of debts. It also included a nonstandard provision purporting to vest the property in BNYM upon confirmation. BNYM objected to the second amended plan because it did not want to take title to the property. BNYM found taking title objectionable, in part, because it would make BNYM responsible for ongoing obligations associated with the property—including dues and assessments. Those obligations were substantial. Dues for the property exceed $15,000 per year and, as noted, assessments for failure to replace the windows ran as high as $5,000 per month.

In September 2014, the Lincoln County Circuit Court ruled in a companion action to the collection litigation that the first special assessment violated Oregon law because it had been assessed against only a subset of unit owners without a determination that those unit owners were at fault. In response to that decision, Meritage rescinded the first special assessment.

---

[2] The summary judgment record contains a complaint in yet another state-court action in which some Meritage at Little Creek unit owners argue that Meritage lacked legal authority to levy the first special assessment. *See* Warren Decl. Ex. 6 June 20, 2017. Because the Watts have not asserted any such challenge here, I assume, but do not decide, that the first special assessment complied with the terms of the settlement agreement.

[3] Meritage objected to the Watts' first two proposed plans.

Meritage applied a credit in the amount of the first special assessment to the Watts' $175,504 stipulated-judgment debt, which was by then a part of the Watts' bankruptcy proceeding.

During the fourth quarter of 2014, Meritage found that the Watts (and others) were at fault with respect to the unreimbursed attorney's fees in the HOA litigation. It then levied a new special assessment ("second special assessment") against the Watts in the amount of $26,316.25.

On October 15, 2014, the bankruptcy court confirmed the plan over BNYM's objection, and the property was transferred to BNYM. BNYM appealed. On April 22, 2015, this Court vacated and remanded, holding that the bankruptcy court lacked statutory authority to force an objecting creditor to assume a debtor's interest in and ongoing liabilities associated with a piece of property. *Bank of N.Y. Mellon v. Watt*, 2015 WL 1879680, *7 (D. Or. Apr. 22, 2015).[4]

On August 27, 2015, the property was reconveyed to BNYM through a sale under 11 U.S.C. § 363. The practical effect of this complex procedural history is that, after they filed for bankruptcy, the Watts were the owners of the property for roughly eleven months.[5]

Meritage ceased attempts to collect the stipulated judgment from the Watts after they filed for bankruptcy. However, throughout the bankruptcy process, Meritage has continued to engage in collection activities against the Watts. Through those efforts, including in this action, Meritage seeks to collect three debts it asserts are post-petition obligations incurred during the eleven months the Watts owned the property after filing for bankruptcy: unpaid post-petition homeowners' association dues ("HOA dues"), unpaid post-petition assessments for failure to replace the windows ("window fines"), and the second special assessment. Meritage sent the

---

[4] The Watts' appeal of that decision is pending before the Ninth Circuit. *See Bank of N.Y. Mellon v. Watt*, 9th Cir. Case No. 15-35484.

[5] The Watts owned the property for one seven-month stretch (the period between the date they filed for bankruptcy and the date the bankruptcy court confirmed the plan) and one four-month stretch (the period between the remand order and the § 363 sale).

Watts collection statements regarding those debts in August 2014,[6] November 2014, January 2016, and May 2016. Nicholas Watt Decl. ¶ 12.

In June 2016, Meritage initiated this action as an adversary proceeding in bankruptcy court. Meritage seeks a declaratory judgment endorsing its collection efforts as "legitimate efforts to enforce the Watts' obligations under the CCRs" and "an appropriate exercise of Meritage's fiduciary obligation to assure unit owners comply with the CCRs." Compl. ¶ 45. Meritage also seeks money damages, including attorney's fees, which it calculated to total $124,969.03 as of the date the complaint was filed. *Id.* ¶¶ 49–50.

Pursuant to 28 U.S.C. § 157(d) and Local Rule 2100-4, Judge Dunn *sua sponte* issued a report and recommendation asking this Court to withdraw the reference with respect to the adversary proceeding. Judge Dunn's recommendation rested on his determination that state law issues predominate over bankruptcy issues in this case and on the relationship between Meritage's claims in this action and its claims against BNYM in another case already pending in this Court. Judge Dunn also questioned whether the bankruptcy court had authority to adjudicate Meritage's claims under recent Supreme Court precedent. The case was assigned to Judge Hernandez, who adopted Judge Dunn's report and recommendation and withdrew the reference. The case was then reassigned to me based on its close factual connection to *Meritage Homeowners' Association v. The Bank of New York Mellon*, Case No. 6:16-cv-00300.

Meritage had filed a motion for partial summary judgment in bankruptcy court. That motion, which was fully briefed when Judge Hernandez withdrew the reference, sought summary judgment with respect to the Watts' obligation to pay the second special assessment and unpaid

---

[6] The August 2014 statement did not include the second special assessment, which was not levied until later that year.

dues. Meritage did not seek summary judgment with respect to the window assessments or attorney's fees.

On April 11, 2017, I denied Meritage's motion. I concluded that Meritage was not entitled to summary judgment with respect to the second special assessment because that assessment

> is simply the first special assessment in a new form. Because the Watts' obligation to pay both the first and second special assessments arose from the same pre-petition conduct, and because the Watts played no affirmative role in the post-petition events that required the first special assessment to be rescinded, the second special assessment is part of a debt "provided for by the plan" and subject to discharge under [11 U.S.C.] § 1328(a).

*Meritage Homeowners' Ass'n*, 2017 WL 1364209 at *5. I also concluded that the Watts were liable for $7,422.96 in unpaid dues and associated interest. *Id.* at *6. However, I could not grant summary judgment with respect to the unpaid dues because the Watts had made a partial settlement payment of $14,969.79. *Id.*

The Watts now move for summary judgment on all Meritage's claims. They also seek summary judgment on their first and third counterclaims, which allege violation of the Bankruptcy Code's automatic stay and breach of the settlement agreements in the HOA litigation and window litigation.

## STANDARD OF REVIEW

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine issue of material fact. *Id.*; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324. "Summary judgment is inappropriate if

dues. Meritage did not seek summary judgment with respect to the window assessments or attorney's fees.

On April 11, 2017, I denied Meritage's motion. I concluded that Meritage was not entitled to summary judgment with respect to the second special assessment because that assessment

> is simply the first special assessment in a new form. Because the Watts' obligation to pay both the first and second special assessments arose from the same pre-petition conduct, and because the Watts played no affirmative role in the post-petition events that required the first special assessment to be rescinded, the second special assessment is part of a debt "provided for by the plan" and subject to discharge under [11 U.S.C.] § 1328(a).

*Meritage Homeowners' Ass'n*, 2017 WL 1364209 at *5. I also concluded that the Watts were liable for $7,422.96 in unpaid dues and associated interest. *Id.* at *6. However, I could not grant summary judgment with respect to the unpaid dues because the Watts had made a partial settlement payment of $14,969.79. *Id.*

The Watts now move for summary judgment on all Meritage's claims. They also seek summary judgment on their first and third counterclaims, which allege violation of the Bankruptcy Code's automatic stay and breach of the settlement agreements in the HOA litigation and window litigation.

## STANDARD OF REVIEW

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine issue of material fact. *Id.*; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324. "Summary judgment is inappropriate if

reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. Partnership*, 521 F.3d 1201, 1207 (9th Cir. 2008).

## DISCUSSION

I.  *Meritage's Claims*

The Watts first seek summary judgment with respect to Meritage's claims. In essence, they contend that their maximum liability in this case could not possibly exceed the $14,969.79 payment they already made. To evaluate that argument, I must carefully examine Meritage's allegations and revisit what was and was not decided in the prior summary judgment order.

Meritage sought $124,969.03 in damages as of the date the complaint was filed in June 2016.[7] That number corresponds exactly to the amount Meritage stated was due in an April 2016 statement to the Watts. The statement breaks down the amount due as follows:

| | | |
|---|---|---|
| **Unpaid Dues** | *Principal* | $7,100.80 |
| | *Interest* | $1,099.55 |
| **Window Fines** | *Principal* | $25,000.00 |
| | *Interest* | $12,994.72 |
| **Special Assessment** | *Principal* | $26,316.25 |
| | *Interest* | $6,177.47 |
| **Attorney's Fees (est.)** | | $60,000.00 |
| **Other Fees** | | $1,250.00 |
| **Offset for Partial Payment** | | ($14,969.76) |
| | **TOTAL:** | $124,969.03 |

Nicholas Watt Decl. Ex. 4 May 8, 2017.

---

[7] Meritage alleges the amount of damages at issue in the case continues to grow because of interest.

Page 7 – AMENDED OPINION AND ORDER

The prior summary judgment order decided two issues. First, it held that there is no question of material fact that the Watts are liable to Meritage for $7,100.80 in unpaid dues and at least $322.16 in interest on those dues.[8] *Meritage Homeowners' Ass'n*, 2017 WL 1364209 at *6. Second, it held, as a matter of law, that Meritage cannot collect the second special assessment (or any interest or fees attributable solely to that assessment) in this action. *Id.* at *5. Importantly, the order did not decide any issues related to the window fines or attorney's fees.[9]

The Watts begin by arguing that the window fines, like the second special assessment, are pre-petition debts subject to discharge. They contend that because the resolution authorizing the window fines was adopted before they filed for bankruptcy, any fines assessed pursuant to that resolution are pre-petition debts subject to discharge. I disagree, and hold that the post-petition window fines are not dischargeable in the Watts' bankruptcy proceeding.

---

[8] There remain questions of material fact as to whether the Watts owe additional interest or fees on the unpaid dues.

[9] The attorney's fees question remains open notwithstanding footnote four of the prior opinion, which stated that "[i]t is possible that Meritage would be entitled to attorney's fees and costs to the extent they (1) are attributable to efforts to collect the unpaid dues only and not the second special assessment and (2) took place before the date of the settlement payment. However, any such entitlement would be offset by the amount of the settlement payment that exceeded the Watts' dues, interest, and fees obligation." *Meritage Homeowners' Ass'n*, 2017 WL 1364209 at *6 n.4. The footnote was intended only to provide further explanation for why Meritage was not entitled to summary judgment with respect to unpaid dues. It did not resolve any substantive issues related to Meritage's right to attorney's fees.

The footnote contains a clear error which I exercise my discretion to correct. Meritage cannot collect any attorney's fees and costs attributable *only* to efforts to collect the second special assessment. However, it remains possible that Meritage is entitled to attorney's fees for collection activity aimed at *both* the second special assessment *and* some other debt (for example, unpaid dues) that Meritage had a legal right to pursue. To the extent the prior summary judgment opinion said otherwise, it is no longer law of the case. *See United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997) (enumerating exceptions to the law of the case doctrine).

The seminal case on the treatment of HOA dues in bankruptcy is *In re Rosenfeld*, 23 F.3d 833 (4th Cir. 1994). In that case, the Fourth Circuit faced a split of authority. *Id.* at 836. One line of cases held that any obligation to pay post-petition HOA dues is a pre-petition debt subject to discharge because such obligations arise from a pre-petition contract. *Id.* at 836–37. Another line of cases held that post-petition HOA dues are not dischargeable where, under state law, the obligation to pay such dues is "a function of owning the land with which the covenant runs." *Id.* at 837. The Fourth Circuit adopted the reasoning of the second line of cases. That holding has been adopted by both the Ninth Circuit Bankruptcy Appellate Panel, *Foster*, 435 B.R. at 658–59, and this Court, *Bank of N.Y. Mellon*, 2015 WL 1879680 at *3.

Here, there is no basis for treating the window fines differently from the HOA dues. Meritage's authority to levy special assessments, like its authority to assess dues, arises from the CCRs. Freitag Decl. Ex. 5 §§ 10.4 & 10.5 Feb. 8, 2017. Under Oregon law, both dues and other types of assessments are ongoing obligations that run with the land. *See* Or. Rev. Stat. § 94.712(1) (drawing no distinction between dues and other assessments). And just as owners at Meritage at Little Creek must pay dues for each month they own the property, they must pay window fines for each day they fail to repair the windows, up to a monthly ceiling. Thus, any HOA dues or window fines attributable to days before the date the Watts filed their bankruptcy petition are pre-petition debts subject to discharge. But any HOA dues or window fines attributable to days after that filing date are post-petition debts and not part of the bankruptcy proceeding.

Treating the window fines like the HOA dues is fully consistent with my prior holding that the second special assessment is a pre-petition debt subject to discharge. Unlike the window fines and HOA dues Meritage seeks to collect from the Watts, the charges included in the second

special assessment arose exclusively from pre-petition events: the HOA litigation and settlement and the insurance company's denial of Meritage's claim for attorney's fees.

Substantial questions of fact remain regarding the Watts' liability for window fines, attorney's fees, interest, and other fees. Accordingly, I deny the Watts' motion for summary judgment on Meritage's claims.

II. *The Watts' Counterclaims*

The Watts also move for summary judgment on two of their counterclaims. They argue that there is no question of material fact that Meritage's collection activities violated the automatic stay and breached both the HOA litigation settlement agreement and the windows litigation settlement agreement.

    A.    *Violation of the Automatic Stay*

The Watts contend that when Meritage sent them collection statements and filed this action after they filed for Chapter 13 bankruptcy, it violated the Bankruptcy Code's automatic stay provision. When a debtor files for bankruptcy, the stay "suspends all activity relating to collection of pre-filing debts, with a number of exceptions." *In re Partida*, 862 F.3d 909, 911 (9th Cir. 2017). The stay's purpose is "to give the debtor a breathing spell from his creditors by stopping all collection efforts, all harassment, and all foreclosure actions." *Id.* (quotation marks omitted) (alterations normalized). This allows the debtor "time to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy." *Id.* (quotation marks omitted).

As relevant here, the automatic stay halts

> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the

case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title; [and]

. . .

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title[.]

11 U.S.C. §§ 362(a)(1) & (6). The statute further provides than "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." *Id.* § 362(k)(1).

Meritage correctly observes that the prior summary judgment order did not explicitly resolve whether the second special assessment was a "claim against the debtor that arose before the commencement of the case" within the meaning of § 362(a)(6). But here, whether the second special assessment is subject to discharge under § 1328(a) (the question decided in the prior summary judgment order) and whether the second special assessment arose before the commencement of the Watts' bankruptcy proceeding (the question at issue in the present summary judgment motion) are indistinguishable inquiries.[10] Because the first and second special assessments are effectively the same debt, I hold that the second special assessment arose before the commencement of the bankruptcy case. Meritage's attempts to collect the second special assessment after the Watts filed for bankruptcy therefore violated the automatic stay. The only remaining question is whether that violation was willful.

The Ninth Circuit has long adhered to the same definition of willfulness in this context:

---

[10] In support of its argument that the second special assessment arose after the Watts filed their bankruptcy petition, Meritage reasserts the same arguments it made in its partial summary judgment motion. Meritage's reliance on the same authority in both briefs suggests that it agrees that the analyses of whether a debt is subject to discharge under § 1328(a) and whether a debt is a "claim" that "arose before the commencement of the case" are, for present purposes, indistinguishable. I carefully considered and rejected Meritage's arguments in the prior summary judgment order, and see nothing in the text of § 362(a)(6) that alters the analysis.

Page 11 – AMENDED OPINION AND ORDER

> A "willful violation" does not require a specific intent to violate the automatic stay. Rather, the statute provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional. Whether the party believes in good faith that it had a right to the property is not relevant to whether the act was "willful" or whether compensation must be awarded.

*In re Pinkstaff*, 974 F.2d 113, 115 (9th Cir. 1992) (citing *In re Bloom*, 875 F.2d 224, 227 (9th Cir. 1989)). This definition of "willful"—requiring only knowledge of the stay and an intentional, as distinct from accidental, attempt to collect a debt—admittedly imposes a stringent standard on creditors. As the Ninth Circuit Bankruptcy Appellate Panel explained,

> [o]nce a creditor knows that the automatic stay exists, the creditor bears the risk of all intentional acts that violate the automatic stay regardless of whether the creditor means to violate the automatic stay. . . . The only solace for the creditor who winds up willfully violating the automatic stay without meaning to do so is that a good heart may figure in the assessment of . . . damages. Sympathetic facts may be used to avert punitive damages and, in view of the trial judge's discretion over calculation of actual damage awards, may also figure into the calculus of actual damages.

*In re Campion*, 294 B.R. 313, 318 (9th Cir. B.A.P. 2003).

Meritage's post-petition conduct activities were "willful" within the meaning of § 362(k)(1). It is undisputed that Meritage knew about the Watts' bankruptcy filing and the automatic stay. Notwithstanding that knowledge, it chose to pursue its claim for the second special assessment after the Watts filed their Chapter 13 petition. Whether that claim was a pre-petition debt subject to discharge or a recoverable post-petition debt was an open question under the law of this circuit. In choosing to attempt to collect the second special assessment post-petition, Meritage bore the risk of violating the automatic stay by attempting to collect a pre-petition debt.

I therefore grant the Watts' motion for summary judgment on their first counterclaim.

B. *Breach of the Settlement Agreements*

Next, the Watts argue that Meritage's collection activities violate the terms of the settlement agreements reached in the HOA litigation and the window litigation. Breach of a settlement agreement is a contract law claim governed by state law. *See United Commercial Ins. Serv., Inc. v. Paymaster Corp.*, 962 F.2d 853, 856 (9th Cir. 1992) ("The construction and enforcement of settlement agreements are governed by principles of local law which apply to interpretation of contracts generally.") (citation and quotation marks omitted); *cf. Matter of Sparkman*, 703 F.2d 1097, 1099 (9th Cir. 1983) ("When a bankruptcy court adjudicates a contract claim in connection with a petition in bankruptcy, the court applies state law to the contract dispute unless the bankruptcy code provides otherwise.") (citation omitted). Oregon generally permits the contracting parties to choose which state's substantive law controls their dispute. Or. Rev. Stat. § 15.350(1). Both agreements at issue here provide that they are to be interpreted in accordance with Oregon law.

In interpreting a contract, Oregon courts "seek to implement the intent of the parties to the contract" by "consider[ing] the text of the contractual provision at issue in the context of the contract as a whole." *James v. Clackamas Cty.*, 299 P.3d 526, 532 (Or. 2003). If the meaning of the text is clear, the analysis ends. *Id.* If the provision at issue is ambiguous, courts consider extrinsic evidence of the contracting parties' intent. *Yogman v. Parrott*, 937 P.2d 1019, 1022 (Or. 1997). Finally, if evidence of the parties' intent does not resolve the ambiguity, courts rely on "appropriate maxims of construction" to reach a decision. *Id.*

1. *HOA Litigation Settlement Agreement*

The Watts contend that Meritage's attempts to collect the second special assessment breached the terms of the HOA litigation settlement agreement. In that agreement, Meritage

agreed to "forever release Plaintiffs" from "any and all past, present, and future claims arising from . . . the allegations in the HOA litigation, including, but not limited to, claims for expenses, costs, attorney's fees, and damages of any kind, nature, or basis whether the claims are known or unknown, anticipated or unanticipated, presently existing or hereafter arising." Freitag Decl. Ex. 2 ¶ 3 Feb. 8, 2017. The agreement also contained the following provision:

> Each Party acknowledges that the facts from which this Agreement arise are uncertain, and each Party assumes the risk that the damage alleged by Plaintiffs at The Meritage Planned Community may worsen in the future, that new or unforeseen damage may occur, new acts or decisions may be discovered or that construction defects and damage may not be as severe as alleged in the HOA Litigation. The agreements and amounts set forth in this Agreement and its exhibits shall not be subject to future modification or reallocation based on any subsequent information, discovery, award, verdict, or judgment in any proceeding or otherwise.

*Id.* ¶ 17. The Watts argue that when Meritage levied the second special assessment, it modified the agreement based on a subsequent judgment in another case, thereby breaching the settlement agreement.[11]

The meaning of "future modification or reallocation" here is ambiguous. I cannot determine from the text of the agreement alone whether the parties intended to prevent Meritage from rescinding an assessment contemplated by the agreement to address a technical problem and then issuing a new assessment to recoup the same amount of money. That ambiguity is fatal to the Watts' motion for summary judgment, because they do not make any arguments about

---

[11] The Watts do not appear to argue that Meritage's attempts to collect unpaid dues, window fines, or associated attorney's fees violate the terms of the agreement. That makes sense, as the release section of the agreement specifically provides that Meritage "does not release any claim against any party for any unpaid dues, fines, interest, assessments, or any other obligation to the HOA." Freitag Decl. Ex. 2 ¶ 3 Feb. 8, 2017. It further excludes from the release "any claims against Plaintiffs for any property damage" which arose or may arise "as a result of . . . Plaintiffs' . . . failure to maintain and/or replace windows in their units in Meritage." *Id.*

extrinsic evidence: they assert that the settlement agreement documents "speak for themselves[.]" Defs.' Reply Supp. Mot. Summ. J. 6. They have, accordingly, failed to carry their initial burden to show the absence of a genuine issue of material fact.[12] Summary judgment must be denied.

### 2. Window Litigation Settlement Agreement

The Watts also aver that Meritage breached the terms of the settlement agreement reached in the windows litigation through its attempts to collect the window fines. Unlike the HOA litigation settlement agreement, the windows litigation settlement agreement is confidential. The parties submitted a copy of the agreement for my *in camera* review. I discuss the terms of the agreement only to the extent necessary to resolve the Watts' summary judgment motion.

The Watts received a cash settlement in the windows litigation. Under the terms of the windows litigation settlement agreement, all intervening unit owners promised that the settlement proceeds would be paid to Dallas Glass, to be applied "exclusively to the cost of repairs" of their units at Meritage at Little Creek. The agreement further directs that the funds paid to Dallas Glass "shall be used as a deposit on the contract and to purchase materials for use in the repair of the Owners Units." The Watts stipulated to entry of judgment against them for all outstanding dues, assessments, fines, penalties, and interest. Meritage, in turn, agreed to take no action to collect on the portions of that judgment attributable to window fines and "to impose no further fines or interest related to repair and replacement of the windows so long as the funds deposited with Dallas Glass on behalf of Watt remain on deposit with Dallas Glass

---

[12] In addition, I note that the Watts appear to be attempting to have it both ways; having benefited in the bankruptcy context from the treatment of the special assessments as the same debt, they now seek to distinguish the two assessments for the purposes of their contract claim.

Page 15 – AMENDED OPINION AND ORDER

unchallenged." The agreement also states that "[i]n the event any effort is made to recover the funds from Dallas Glass or the funds are removed from Dallas Glass for any reason on any basis other than HOA collection actions, the fines suspended under this agreement shall be immediately imposed at $500.00 per day[.]"

When the Watts filed their Chapter 13 petition, the stipulated judgment in the collection litigation became part of the bankruptcy proceeding. Unable to collect on the judgment outside the bankruptcy proceeding, Meritage garnished the funds on deposit with Dallas Glass to pay part of the stipulated judgment. In response, the Watts filed amended schedules and a Chapter 13 plan, allowing them an option to seek a preferential transfer upon the Chapter 13 trustee's assignment of rights to the Watts. Meritage then resumed assessing window fines.

Having reviewed the settlement agreement, the summary judgment record, and the parties' arguments, I conclude that no questions of material fact remain and that Meritage breached the windows litigation settlement agreement when it garnished the funds on hold with Dallas Glass. I also conclude that no questions of material fact remain as to Meritage's imposition of new window fines. Meritage breached the agreement when it began assessing new window fines.

Meritage's decision to garnish the funds on hold with Dallas Glass plainly violates the provisions of the agreement stating that those funds would be used exclusively to repair the defective windows. Meritage argues that garnishment of the Dallas Glass funds to satisfy the collection judgment was "contemplated" and "authorized" by the agreement. Pl.'s Resp. Defs.' Mot. Summ. J. 19. There are two references to "HOA collection actions" in the contract. Those provisions provide that if there is any attempt to "recover" or "remove" the funds from Dallas Glass other than HOA collection action, Meritage may begin assessing new window fines and

may execute the judgment against the owner attempting to access the Dallas Glass funds. Contrary to Meritage's representation, neither provision voids the agreement or authorizes it to garnish the funds paid to Dallas Glass. It is plain from Meritage's briefing that it believes it was unfairly denied the benefit of its bargain when the Watts filed for bankruptcy. But that belief boils down to a policy disagreement with the Chapter 13 bankruptcy system or perhaps a moral objection to the Watts' actions. Neither can justify Meritage's breach of the plain text of the settlement agreement.

Similarly, Meritage's assessment of new window fines also violates the agreement. Meritage may begin assessing new window fines only if the Watts attempt to "recover" or "remove" the funds from Dallas Glass. Meritage argues that the Watts' filing of amended schedules constitutes pursuit of a preferential transfer. Meritage argues that such pursuit of a preferential transfer is the Watts' attempt to "recover" the funds from Dallas Glass, which justifies its imposition of the window fines. The Watts were required by law to inform the Chapter 13 trustee about the garnishment by amending their asset schedules. While the amended schedules gave the Watts an option to seek a preferential transfer, no evidence supports that the Watts indeed sought a preferential transfer. Thus, no questions of material fact remain regarding whether Meritage breached the terms of the agreement when it assessed new window fines. Reasonable factfinders could not find the Watts' filing of amended schedules was pursuit of a preferential transfer in the bankruptcy proceeding or an effort to recover the funds from Dallas Glass. The Watts are therefore entitled to summary judgment on their third counterclaim.

## CONCLUSION

The Watts' motion for summary judgment (doc. 35) is GRANTED with respect to their first counterclaim, regarding violation of the automatic stay. The motion is also GRANTED

with respect to their third counterclaim, regarding breach of the settlement agreements. Finally, the motion is DENIED with respect to Meritage's claims.

IT IS SO ORDERED.

Dated this 20th day of November 2017.

_____
Ann Aiken
United States District Judge